IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REYNALDO SUAZO, *et al.*, | * | |
| Plaintiffs, | * | Civil Action No. RDB-18-1451 |
| v. | * | |
| U.S. BANK TRUST, NA, *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiffs Reynaldo and Eva Suazo ("Mr. and Mrs. Suazo"), Ronald Lewis ("Mr. Lewis"), and Catherine Martinson ("Ms. Martinson") (collectively, the "Named Plaintiffs" or "Plaintiffs"), on behalf of themselves and other similarly situated mortgage borrowers, allege that Defendants Caliber Home Loans, Inc. ("Caliber") and U.S. Bank Trust, NA, solely in its capacity as Trustee for LSF9 Master Participation Trust ("LSF9") (collectively, "Defendants"), have unjustly enriched themselves by engaging in unlawful debt collection practices. Caliber is alleged to have acted as the debt collector for LSF9, a special purpose vehicle holding title to high-risk mortgages. Through Caliber, LSF9 allegedly pursued outstanding mortgage obligations without the appropriate license under Maryland law. Additionally, Plaintiffs allege that the Defendants unlawfully charged inspection fees as part of these collection efforts.

Currently pending before this Court is the Plaintiffs' Motion for Leave to File an Amended Complaint. (ECF No. 35.) The Amended Complaint adds new factual allegations and changes the Plaintiffs' theory of the case in an effort to comport with the recent opinion of the Maryland Court of Appeals in *Blackstone v. Sharma*, 461 Md. 87, 191 A.3d 1188 (2018).

Defendants oppose the amendment and seek dismissal of this case with prejudice. This Court has reviewed the parties' submissions and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 35) is DENIED. This Court finds that Plaintiffs have failed to state a claim under both the Original and Amended Complaints. Accordingly, this case is DISMISSED WITH PREJUDICE.

## BACKGROUND

### I. Factual Background

Plaintiffs allege that Defendants unjustly enriched themselves by engaging in mortgage debt collection practices which ran afoul of Maryland law. Defendant LSF9 is a Delaware Statutory Trust which belongs to a large family of private equity funds owned by a private equity firm called Lone Star Funds ("Lone Star"). (Am. Compl. ¶ 23.) Lone Star is organized into sixteen private equity funds which are structured as closed-end, private-equity limited partnerships which include corporate and public pension funds, sovereign wealth funds, university endowments, foundations, funds of funds, and high net worth individuals. (*Id.*) Although US Bank, N.A. is named as the trustee for LSF9, it does not manage the fund. (*Id.*) Hudson Advisors L.P. performs that task; it conducts due diligence, asset management, and other support services for LSF9 and the assets the trust acquires. (*Id.*)

LSF9 participates in the mortgage industry's secondary market, which springs from mortgage lenders' desire to offload the mortgages that they originate. *See Blackstone*, 461 Md. at 136, 191 A.2d 1188 (discussing the mortgage industry's secondary market and mortgage-backed securitization). In recent years, hedge funds and private equity funds have acquired

hundreds of thousands of defaulted consumer mortgage loans. (Am. Compl. ¶ 30.) The funds rely on collection agencies to extract profit from their mortgage portfolios. (*Id.*)

In league with this trend, Plaintiffs allege that Lone Star and LSF9 have acquired distressed and nonperforming home loans. (*Id.* at ¶ 23.) LSF9 has acquired these loans for an amount less than the value of the real estate secured by the debt and less than the sum due on the loan balance. (*Id.*) Defendant Caliber has allegedly served as LSF9's "debt collector" since July 10, 2014. (*Id.* at ¶ 24.) In turn, Caliber relies on law firms, including the BWW Law Group, LCC and the Law Offices of Jeffrey Nadel, to assist it with foreclosure proceedings. (*Id.* at ¶¶ 25, 106.) Consumer advocates have complained that Caliber lulls struggling borrowers into "interest-only" payment plans which quickly balloon into unaffordable payments. (*Id.* at ¶ 30.) Plaintiffs allege that Caliber does not expect to convert non-performing loans into performing loans, but rather uses deceptive practices to obtain a greater profit through foreclosure. (*Id.* at ¶ 107.) LSF9 is alleged to profit from these practices; a "substantial majority" of the properties related to each loan it acquires are expected to be liquidated. (*Id.* at ¶ 33.)

LSF9 and Caliber are alleged to have violated Maryland law, and unjustly enriched themselves, at the expense of the Named Plaintiffs and the proposed classes. The allegations vary with respect to each Named Plaintiff, but Defendants are alleged to have engaged in the following general pattern of activity. First, LSF9 acquired each Plaintiff's mortgage loan from a prior loan servicer, such as Bank of America or Ocwen Loan Servicing, LLC, after the loans entered default. (*Id.* at ¶¶ 39; 56; 79.) Next, Caliber began its collection efforts and entered into standard modification/forbearance agreements with the Named Plaintiffs on behalf of LSF9. (*Id.* at ¶¶ 45-47, 64-65, 94.) In some cases, these collection efforts included threats of

foreclosure or the initiation of foreclosure proceedings. (*Id.* at ¶ 59, 82.) Then, Caliber, acting on behalf of LSF9, collected sums claimed due for interest, fees, and costs unrelated to the principal loan balance. (*Id.* at ¶¶ 47, 73, 98; 135.) Ms. Martinson in particular alleges that Caliber charged her various fees in violation of Maryland law, including property inspection fees in violation of Md. Code Ann., Com. Law § 12-121(b) and foreclosure costs and fees in violation of a court order issued by the Circuit Court for Carroll County, Maryland. (*Id.* at ¶ 58; 68.) Ultimately, the Named Plaintiffs either refinanced their loan or made payments under unfavorable "interest-only" modification agreements. (*Id.* at ¶¶ 49-51; 59-70; 93-94.)

## II. Procedural Background.

Plaintiffs commenced this putative class action lawsuit in the Circuit Court for Montgomery County, Maryland on April 12, 2018. On May 18, 2018, Defendants removed the case to this Court,[1] citing 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, 1453 and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). In their Original Class Action Complaint (ECF No. 2), Plaintiffs alleged that LSF9 had unlawfully extracted profits from mortgage borrowers without obtaining a license to pursue debt collection activities as required under the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-301, *et seq.* (*See, e.g.*, Compl. ¶¶ 111, 114.) On June 6, 2018, this Court stayed this case pending the resolution of a consolidated appeal of four Maryland Circuit Court cases before the Court of Appeals of Maryland, *Blackstone, et al. v. Sharma, et al.*; *Shanahan, et al. v. Marvastian,*

---

[1] On May 18, 2018, Defendants filed a Joint Motion (ECF No. 12) requesting transfer of this case to the undersigned because two related cases were pending before the undersigned: *Altenburg v. Caliber Home Loans, Inc., et al.*, RDB-16-3374; and *Knopp v. O'Sullivan, et al.*, RDB-17-3806. On May 23, 2018, this Court granted the Motion and the case was transferred from the Honorable Paul W. Grimm to the undersigned. (ECF No. 20.)

*et al.*, Case No. 40, Sept. Term, 2017; *O'Sullivan, et al. v. Altenburg, et al.*, Case No. 45, Sept. Term, 2017; *Goldberg, et al. v. Neviaser, et al.*, Case No. 47, Sept. Term, 2017.

On August 2, 2018, the Maryland Court of Appeals issued its ruling in the consolidated appeal and held that a foreign statutory trust, such as LSF9, is not required to obtain a license as a collection agency under MCALA.[2]  *See Blackstone v. Sharma*, 461 Md. 87, 191 A.3d 1188 (2018).  Following the *Blackstone* decision, this Court lifted the Stay; dismissed with prejudice Plaintiffs' declaratory judgment claim (Count I); dismissed without prejudice Plaintiffs' unjust enrichment claims (Counts II and III); clarified that Plaintiffs' inspection fee claim under Md. Com. Law § 12-121(a)(1)(ii) (Count IV) remained pending; permitted Plaintiffs to file a Motion for Leave to File an Amended Complaint; and dismissed with prejudice all claims asserted against a third Defendant, Select Portfolio Servicing, Inc.  (Letter Order, ECF No. 34.)

On November 9, 2018, Plaintiffs filed a Motion for Leave to File an Amended Complaint (ECF No. 35.)  The proposed Amended Complaint (ECF No. 35-3) makes sweeping changes to the Original Complaint.  In light of the *Blackstone* decision, Plaintiffs withdraw their allegation that Defendants violated MCALA, and now asserts that Defendant LSF9 violated the Maryland Mortgage Lender Law ("MMLL"), Md. Code, Fin. Inst. § 11-501, *et seq.* by operating as an unlicensed mortgage lender.  (*See, e.g.*, Am. Compl. ¶¶ 2-3, 5-12.)  The Amended Complaint also adds new factual allegations to support its inspection fee claim (Compl. ¶¶ 13-19, 54-76), and introduces a new claim pursuant to the Maryland Consumer

---

[2]     This ruling deviated from decisions of this Court, which held that foreign statutory trusts must obtain an MCALA license before pursuing a foreclosure action.  *See Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 726-27 (D. Md. 2011); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 523 (D. Md. 2013); *Altenburg v. Caliber Home Loans, Inc.*, RDB-16-3374, 2017 WL 2733803, at *6 (D. Md. June 26, 2017).

Protection Act, Com. Law § 13-101, *et seq.* and the Maryland Consumer Debt Collection Act, Com. Law § 14-201, *et seq.* The Amended Complaint now seeks to certify two classes (as opposed to three classes sought in the Original Complaint) comprised of consumers who allegedly suffered harm because of Defendants' practices: the "Caliber Class" and the "Inspection Fee Class." (Am. Compl. ¶ 1.)

In sum, the Amended Complaint asserts the following three counts: an unjust enrichment claim on behalf of the Named Plaintiffs and the Caliber Class against LSF9 and Caliber (Count I); a claim arising from alleged violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. Law § 14-201, *et seq.* and the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-101, *et seq.*, brought by the Named Plaintiffs and the Caliber Class against all Defendants (Count II); and an inspection fee claim based on violations of Md. Code, Com. Law § 12-121(a)(1)(ii) on behalf of Ms. Martinson and the Inspection Class against LSF9 and Caliber (Count III). In a single filing, Defendants oppose the Amendment and seeks dismissal of all of Plaintiffs' claims with prejudice. (Defs.' Brief in Opposition, ECF No. 36.)

## STANDARD OF REVIEW

### I. Motion for Leave to File an Amended Complaint.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to file an amended complaint "shall be freely given when justice so requires." This "liberal rule" reinforces the "federal policy in favor of resolving cases on their merits instead of disposing them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). As noted by the United States Court of Appeals for the Fourth Circuit, Rule 15(a) ensures that the "plaintiff [is] given

every opportunity to cure a formal defect in his pleading." *Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir.1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed.1990)).

The "liberal rule" of Rule 15(a) is not absolute. A court may deny leave to file an amended complaint when the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if its claims cannot survive a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Prejudice is analyzed with reference to the "nature of the amendment and its timing," as the "further the case progresse[s] before judgment [is] entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Laber*, 438 F.3d at 427.

## II.     Motion to Dismiss for Failure to State a Claim.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a Court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a Complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege.").

## ANALYSIS

Plaintiffs seek to amend their Complaint and bring it within the ambit of the Maryland Court of Appeals' decision in *Blackstone*. This effort fails. Defendants petition this Court to reject Plaintiffs' proposed Amended Complaint and move this Court to dismiss Plaintiffs' claims with prejudice. Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 35) is DENIED. The Amended Complaint is futile because it fails to state a claim under Counts I, II, and III in light of the *Blackstone* decision. Accordingly, the Original Complaint remains operative. The only remaining claim in the Original Complaint is the Plaintiffs' inspection fee claim (Count IV), which fails to state a cause of action. Accordingly, Plaintiffs' claims are DISMISSED WITH PREJUDICE.

## I.   Plaintiffs Have Failed to State a Claim under Counts I and II.

Counts I and II of the proposed Amended Complaint are premised on Plaintiffs'
allegation that LSF9 did not have the appropriate license under Maryland law.  Plaintiffs allege
that the Maryland Mortgage Lender Law ("MMLL") required LSF9 to obtain a license to
service mortgage loans and that it did not acquire this license.  Plaintiffs' legal theory is that
Caliber and LSF9 are liable for the common law tort of unjust enrichment (Count I) and
violations of both the Maryland Consumer Debt Collection Article ("MCDCA") and the
Maryland Consumer Protection Act ("MCPA") (Count II) because Caliber helped LSF9
extract profits from the Named Plaintiffs and the putative class members without the license
required by the MMLL.

The parties disagree over whether LSF9, a foreign statutory trust which holds title to
defaulted mortgage loans initiated by other parties and which relies on a third-party debt
collector to obtain profits from said loans, constitutes a "mortgage lender" under the MMLL.
Plaintiffs assert that LSF9 is a mortgage lender required to obtain a license under the MMLL;
Defendants argue that it is not.  All parties maintain that the plain text of the statute, as well
as the relevant legislative history, supports their respective positions.  Additionally, both sides
seek to draw support from the *Blackstone* decision.

To resolve this question of Maryland law, this Court applies the jurisprudence of
Maryland's highest court, the Maryland Court of Appeals.[3]  *Private Mortg. Inv. Servs., Inc. v. Hotel
& Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).  In this case, the Maryland Court of

---

[3]      Jurisdiction over this case is based on complete diversity under 28 U.S.C. § 1332 as well as minimal
diversity under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

Appeals has not decisively settled the issue. Consequently, this Court must "predict how that court would rule if presented with [it.]" *Id.* Maryland principles of statutory interpretation will necessarily guide this Court's analysis. *See Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234-38 (4th Cir. 2014) (interpreting the scope of a Maryland statute based on Maryland principles of statutory construction).

### A.     Judicial Estoppel Does Not Bar Defendants' Arguments.

Before reaching the merits of their proposed new claims, Plaintiffs first argue that judicial estoppel bars Defendants from contesting that LSF9 must be licensed as a mortgage lender. (ECF No. 35-1, at 15.) Plaintiffs baldly claim that the petitioners in *Blackstone*, represented by the same counsel in this case, asserted that LSF9 was exempt from MCALA because of its status as a mortgage lender. Therefore, Plaintiffs argue, LSF9 must concede that it is a mortgage lender under the MMLL. "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). Only conflicting factual positions, as opposed to those of legal theory, trigger judicial estoppel. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007).

In this case, the doctrine does not limit Defendants' arguments because there is no indication that Defendants took a contrary factual position before the Maryland Court of Appeals. Plaintiffs do not cite to a single representation made by the Defendants in prior cases which contradict the Defendants' arguments before this Court. As explained *infra*, the *Blackstone* Court accepted arguments that MCALA was designed to regulate debt collectors, as opposed to other mortgage industry actors. To the extent that Petitioners suggested in prior

proceedings that LSF9 fell within the category of mortgage industry actors unregulated by MCALA, such representations do not foreclose its arguments here.

**B.**   ***Blackstone*** **Did Not Hold that Foreign Statutory Trusts Must Obtain a License Under the Maryland Mortgage Lender Law.**

Plaintiffs argue that the Maryland Court of Appeals' decision in *Blackstone* "specifically supports" its theory that "LSF9 is required to be licensed as a mortgage lender pursuant to the MMLL." (ECF No. 35-1 at 8.)   Although the *Blackstone* Opinion referenced the Maryland Mortgage Lender Law only once, Plaintiffs boldly conclude that "*Blackstone* . . . recognized that the MMLL governed the activities of entities who acquire mortgage loans such as [LSF9.]" (*Id.*)  They argue that *Blackstone's* "basic premise" is that "mortgage players like LSF9 are not required to register as collection agencies because they are already regulated."  (*Id.*)  *Blackstone*, however, drew no such conclusions.

In *Blackstone*, the Maryland Court of Appeals considered only the "limited legal issue" of whether "the General Assembly intended a foreign statutory trust, as owner of a delinquent mortgage loan, to obtain a license as a collection agency under [the Maryland Collection Agency Licensing Act] before substitute trustees instituted a foreclosure action against a homeowner who defaulted on his or her mortgage." 461 Md. at 96, 191 A.3d 1188.  The Court concluded that they did not.  Over the course of its Opinion, the Court of Appeals did not once address the scope of the Maryland Mortgage Lender Law and certainly did not conclude that the statute required LSF9 to obtain a license.

To determine the proper scope of Maryland Collection Agency Licensing Act, the Court considered legal activity related to a 2007 department bill (House Bill 1324) which

revised the definition of the term "collection agencies" under MCALA. During this discussion, the *Blackstone* opinion cited the Maryland Mortgage Lender Law a single time. The Court recounted that, as a part of broader efforts to curb a looming foreclosure crisis, then-Governor Martin J. O'Malley established the Homeownership Preservation Task Force (the "Task Force") to examine current Maryland laws governing the mortgage industry and the foreclosure process. *Id.* at 136, 191 A.3d 1188. The Task Force ultimately produced a report which analyzed the current state of the law and made certain recommendations. The Report did not mention MCALA or collection agencies. *Id.* at 139, 191 A.3d 1188. Instead, it noted that "mortgage brokers, mortgage lenders, and mortgage servicers" must be licensed under the Maryland Mortgage Lender Law. *Id.* The Report also recommended proposed amendments to the Maryland Rules governing the foreclosure process. *Id.* Pursuant to the Task Force's recommendations, the Maryland General Assembly passed comprehensive mortgage foreclosure law reform in subsequent legislative sessions, including 2009 Maryland Laws Ch. 4, which altered the definition of "mortgage lender" in the MMLL. *Id.* at 140, 191 A.3d 1188 (citing 2008 Md. Laws, ch. 1; 2008 Md. Laws, ch. 2; 2008 Md. Laws, ch. 3; 2008 Md. Laws, ch. 4; 2008 Md. Laws, ch. 5; 2008 Md. Laws, ch. 6; 2008 Md. Laws ch. 7; 2008 Md. Laws, ch. 8; 2009 Md. Laws; ch. 4; 2009 Md. Laws, ch. 615; 2010 Md. Laws, ch. 485; 2010 Md. Laws, ch. 323).

Examining this legislative history, the Court of Appeals concluded that the General Assembly "consciously separated the consumer debt collection agency industry under MCALA from the mortgage industry." *Blackstone*, 461 Md. at 140, 191 A.3d 1188. With Maryland Collection Agency License Act and the legislation that followed the Task Force

Report, the Maryland General Assembly resolved to achieve two separate goals: MCALA was designed to "regulate and license certain collection agencies," while other reforms, including alterations to the MMLL, were designed "to protect homeowners by adding certain requirements to the foreclosure process and heavier regulation of the mortgage industry actors." *Id.* at 141. The purpose of these laws informed the proper interpretation of their scope. The Court of Appeals determined that MCALA's definition of "collection agencies" did not embrace "passive debt purchasers" like LSF9 based in part on MCALA's goal of regulating collection agencies as opposed to mortgage industry actors. *Id.* at 120 n.17, 140-41, 191 A.3d 1188.

The *Blackstone* Opinion's discussion of the legal landscape at the time of amendments to the Maryland Collection Agency Licensing Act only served to illustrate that the Maryland General Assembly was not concerned with foreign statutory trusts when it passed the 2007 department bill altering MCALA. *Blackstone's* broad conclusion—that the Maryland General Assembly passed the departmental bill to regulate collection agencies but passed other laws to regulate various mortgage industry actors—does not support the much narrower proposition that foreign statutory trusts like LSF9 are "mortgage lenders" under the Maryland Mortgage Lender Law. The mere fact that Maryland General Assembly sought to regulate mortgage industry actors separate and apart from collection agencies does not counsel any specific conclusions with respect to the scope of the MMLL. *Blackstone* did not hold, either expressly or by necessary implication, that the MMLL requires foreign statutory trusts to obtain a license as a mortgage lender.

**C.      Foreign Statutory Trusts are not "Mortgage Lenders" under the MMLL.**

The MMLL provides that "[a] person may not act as a mortgage lender unless the person" has a license or is exempt under the statute.  Md. Code Ann., Fin. Inst. § 11-504.   In 2009, the Maryland General Assembly amended the definition of the term "mortgage lender." 2009 Md. Laws Ch. 4.   The current version of the statute defines the term to include "any person who: (i) is a mortgage broker; (ii) makes a mortgage loan to any person; or (iii) is a mortgage servicer." Fin. Inst. § 11-501(j)(i).   The term "mortgage servicer" is defined as follows:

(n) "Mortgage servicer" means any person who:

(1) Engages in whole or in part in the business of servicing mortgage loans for others; or

(2) Collects or otherwise receives payments on mortgage loans directly from borrowers for distribution to any other person.

Fin. Inst. § 11-501(n).

Plaintiffs argue that LSF9 "engages in whole or in part in the business of servicing mortgage loans for others" and therefore meets the first of two statutory definitions of the term "mortgage servicer" in the MMLL.   (ECF No. 35-1, at 7 (quoting Fin. Inst. § 11-501(n)(1).)   Plaintiffs reach this conclusion by reference to *Blackstone* and a unique interpretation of § 11-501(n).  First, Plaintiffs note that the *Blackstone* Court described foreign statutory trusts in the mortgage industry as "a pool of loans that will eventually be sold off to others." *Blackstone*, 461 Md. at 138, 191 A.3d 1188.  Next, Plaintiffs compare the two statutory definitions of a "mortgage servicer" as it appears in the MMLL and conclude that the act of

"servicing mortgage loans for others," *see* Fin. Inst. § 11-501(n)(1), encompasses a broader range of activity than merely "collect[ing] or otherwise receiv[ing] payments on mortgage loans directly from borrowers for distribution to any other person," *see* Fin. Inst. § 11-501(n)(2). To conclude otherwise, Plaintiffs argue, would violate a classic canon of statutory construction by rendering § 11-501(n)(1) meaningless. Finally, Plaintiffs make an ambitious logical leap: they assert that a foreign statutory trust's mere existence as a "pool of loans that will eventually be sold off to others," as *Blackstone* put it, constitutes engaging "in whole or in part in the business of servicing mortgage loans for others." Fin. Inst. § 11-501(n)(1).

To determine the proper interpretation of § 11-501(n), this Court follows Maryland principles of statutory interpretation. *See Antonio*, 749 F.3d at 234-38. The "cardinal rule" of statutory interpretation under Maryland law is to "ascertain and effectuate the intent of the General Assembly." *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655, 141 A.3d 90 (2016) (citing *McClanahan v. Washington Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701, 129 A.3d 293 (2015)). The "plain meaning rule" is designed to accomplish this task. Under this rule, courts must give the "ordinary and natural meaning to statutory language." *Id.* The Court must give effect to every word, and "avoid[] constructions that render any portion of the language superfluous or redundant." *State v. Holton*, 420 Md. 530, 541, 24 A.3d 678 (2011) (quoting *Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426 (2002)).

Employing these canons of construction, it becomes clear that the definition of "mortgage servicing" is not so broad as to encompass the mere act of holding title to defaulted mortgage loans. The MMLL defines the term "mortgage servicer" in a somewhat circular manner, setting forth that the term encompasses those who engage in the business of

"servicing mortgage loans for others." Fin. Inst. § 11-501(n)(1). The MMLL does not further define the term "servicing mortgage loans," but the phrase ordinarily refers to "the administration of a mortgage loan, including the collection of payments, release of liens, and payment of property insurance and taxes." *Mortgage Servicing, Black's Law Dictionary* (10th Ed. 2014). This understanding of the term "servicing mortgage loans" in § 11-501(n)(1) both comports with the plain meaning of the term "mortgage servicing" and does not render § 11-501(n)(2) superfluous. The definition in § 11-501(n)(1) encompasses a broad array of mortgage servicing activities such as releasing liens and paying property insurance; the second definition in § 11-501(n)(2) is constrained to the narrower task of "collect[ing] or otherwise receiv[ing] payments on mortgage loans directly from borrowers for distribution to any other person."

Neither of these definitions cover LSF9 both as that entity was understood in *Blackstone* or described in the Amended Complaint. Both of these sources indicate that LSF9 is a passive entity that merely holds title to mortgage loans. As such, it does not engage in any of the activities which potentially fall under the scope of "mortgage servicing." The *Blackstone* Court emphasized that foreign statutory trusts "are called 'special purpose vehicles' because they simply hold the loans managed by the trustees and collected by the mortgage servicers." *Blackstone*, 461 Md. at 138, 191 A.3d 1188. The Court emphasized that trusts like LSF9 are "exclusively a repository" for such loans, and that they lack "employees or offices." *Id.* at 118, 138, 191 A.3d 1188. The proposed Amended Complaint confirms this. The Amended Complaint alleges that LSF9 is a foreign statutory trust which collects title to loans. It does not indicate that LSF9 has employees, officers, or any physical existence whatsoever. Plaintiffs

focus almost exclusively on the collection activities of Caliber, which allegedly served as LSF9's "debt collector." Although the Complaint occasionally alleges that "LSF9 and Caliber" performed various activities or entered into various agreements, the surrounding allegations strongly suggest that Caliber, not LSF9, performed all of these tasks. Even a broad construction of the term "mortgage servicing" does not encompass the entirely passive role that LSF9 takes in the mortgage industry. Accordingly, LSF9 is not a "mortgage lender" under the MMLL and was not required to obtain a license under the statute.

### D. Assignees of Mortgage Lenders are not Subject to the MMLL.

Plaintiffs further argue that LSF9 is subject to the MMLL in its role as an assignee to mortgage lenders. Plaintiffs appear to suggest that, by virtue of assignment alone, assignees acquire the same legal characteristics of the assignor and are bound by the same regulations. (ECF No. 35-1, at 9.) Specifically, Plaintiffs proclaim that "[W]hen LSF9 acquires Maryland mortgage loans like the Named Plaintiffs' loans . . . and the loans of the putative class members, it steps into the shoes of the maker of the loan and qualifies as a mortgage lender." (*Id.*) This argument is simply without merit. It is certainly true that assignees acquire "every right which the assignor possessed under the mortgage at the time of the assignment." Md. Code Ann., Real Prop. § 2-103. Additionally, Maryland courts frequently describe assignees as "standing in the shoes" of the assignor or use like imagery. *Thompkins v. Mountaineer Investments, LLC*, 439 Md. 118, 139, 94 A.3d 61 (2014). Such metaphors do not suggest that one who assumes a contract thereupon assumes the same entity status as the assignor, thereby subjecting it to the same rules and regulations. Quite simply, one does not become a "mortgage lender" merely by obtaining title to a mortgage loan.

The only modern case Plaintiffs cite in support of their assignment argument, *Thompkins v. Mountaineer Investments, LLC*, does not suggest otherwise. In *Thompkins*, the Maryland Court of Appeals recognized that, in some cases, the assignee may assume the obligations and liabilities of the assignor. *Thompkins*, 439 Md. at 140, 94 A.3d 61. Ultimately, however, the Court concluded that an assignee of a second mortgage loan is not presumed to have assumed liabilities arising from the assignor's violations of the Maryland Secondary Mortgage Loan Law ("SMLL"). *Id.* at 140-41. *Thompkins*, therefore, does not suggest that assignees become subject to the same regulations which their assignors must obey. Far from it: *Thompkins* holds that assignees of second mortgages are not even subject to liability arising from the assignor's breach of Maryland law in connection with the creation of the mortgage.

The Maryland Mortgage Lender Law itself does not include assignees of mortgage loans under its definition of "mortgage lender." As previously indicated, this Court must look to the plain language of the MMLL to determine whether its definition of "mortgage lender" encompasses assignees of such lenders. In the course of its analysis, this Court must give effect to every word of the statute. It may not supply words which the General Assembly was capable of inserting but did not. *Chicago Title Ins. Co. v. Mary B.*, 190 Md. App. 305, 317-18, 988 A.3d 1044 (Md. Ct. Spec. App. 2010). The plain language of § 11-501(j) does not so much as mention assignees, only mortgage brokers, entities which make mortgage loans, and mortgage servicers. Elsewhere in the Maryland code, the General Assembly has demonstrated its ability to govern assignees explicitly. *Cf.* Md. Code, Com. Law § 12-109.2(a)(3) ("'Lender'" includes a lender and assignee of a lender"); Real Prop. § 14-601(c) ("'Holder'" means the

mortgagee, trustee, beneficiary, nominee, or assignee of record.").  In this case, it chose not to.

Plaintiffs' flip the rules of statutory construction on their head: they argue that, if the Maryland legislature intended to exclude statutory trusts from the definition of the MMLL, it should have included trusts within its list of entities exempted from the definition.  (ECF No. 35-1, at 19 (citing Fin. Inst. § 11-501(j)(2).)  As Defendants note, this interpretation would "automatically include[] any entity within the definition of 'mortgage lender' that is not specifically exempt."  (ECF No. 36, at 13.)  Norms of statutory interpretation do not require legislative bodies to explicitly indicate which entities it seeks to exclude from a general definition.  While exclusions and exemptions may help to illuminate the scope of a general definition, it is the definition itself that governs, not the exceptions.  In this case, the definition of "mortgage lender" does not include assignees.  The analysis starts and ends with this observation: the MMLL does not require assignees of mortgage loans to obtain a license.

This Court notes that Plaintiffs seek support for their position from actions of the Maryland Commissioner of Financial Regulation, who in December 2014 issued a Cease and Desist Order which analyzed the Maryland Mortgage Lender Law.  To define the scope of the term "mortgage lender," the Commissioner reached beyond the definition of "mortgage lender" and observed the MMLL's definition of "mortgage lending business."  *Id.* (citing Fin. Inst. § 11-501(k)(2)).  This term encompasses "the making or procuring of mortgage loans secured by a dwelling or residential real estate located outside of Maryland."  Fin. Inst. § 11-501(k)(2).  Based on this observation, the Commissioner concluded that "[U]nless a person satisfies an exemption specified by Fin. Inst. § 11-501[(j)](2) . . . a person engaged in the

acquisition of all or any portion of a mortgage loan is a mortgage lender and subject to licensing." *National Payment Relief, LLC*, 2014 WL 7409911, at *3 (Md. Comm. Fin. Reg. 2014).

The Commissioner's conclusion does not dictate the outcome in this case. The Cease and Desist Order did not concern foreign statutory trusts, rendering this persuasive authority somewhat less relevant to the present issue. Moreover, this Court need not look beyond the statutory definition of "mortgage lender" to define the scope of that term. The MMLL plainly states that "mortgage lenders" must obtain a license, and the statute expressly defines the term "mortgage lender." As explained *supra*, that definition does not encompass passive statutory trusts like LSF9 which merely hold title to loans. The term "mortgage lender" as defined in the statute is plain and unambiguous; it does not require reference to the unrelated term "mortgage lending business" § 11-501(k)(2).

LSF9 is not required to obtain a license under the MMLL because it is not a mortgage lender, as that term is defined by the statute. Plaintiffs have failed to state a claim under Counts I and II because these Counts are premised on their faulty legal theory that LSF9 violated the MMLL by failing to acquire the proper licensing.[4]

## II. Plaintiffs' Have Failed to State a Claim Under Count III.

In Count III of the proposed Amended Complaint, Plaintiffs claim that Caliber and LSF9 unlawfully collected inspection fees. Maryland Law provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property." Com. Law § 12-121(b). Certain exceptions apply. A lender may assess an inspection fee "if

---

[4]     This Court need not reach potential alternative grounds for dismissal, including that Plaintiffs did not plead the elements of unjust enrichment and did not make proper damages allegations.

the inspection is needed to ascertain completion of: (1) Construction of a new home; or (2) Repairs, alterations, or other work required by the lender." *Id.* § 12-121(c). Defendants argue that Plaintiffs fail to state a claim under this provision because (1) LSF9 is not a "lender" under the inspection fee statute; and (2) the proposed Second Amended Complaint does not allege that the inspection fees were charged in violation of Maryland law. This Court finds these arguments persuasive.[5]

### A. LSF9 is not Subject to the Inspection Fee Statute.

Defendants correctly maintain that the inspection fee statute does not regulate foreign statutory trusts. A "lender" under the statute is defined as "a person who makes a loan under this subtitle." Com. Law. § 12-101(f). The proposed Amended Complaint does not allege that LSF9 makes loans at all. Accordingly, LSF9 is not the subject of the statute's prohibition.

Plaintiffs assert that LSF9 nevertheless constitutes a "lender" under the statute because it has assumed mortgage loans and "stepped into the shoes" of the assignors. To support this argument, Plaintiffs once again cite *Thompkins*, *supra*, and other cases which discuss the general proposition that assignees obtain the rights and benefits enjoyed by assignors. For the same reason that these cases do not support assignee liability under the MMLL, they also do not support assignee liability under the inspection fee statute. Assignees do not adopt the entity status of assignors and are not presumed to inherit their liabilities. The inspection fee statute does not otherwise include assignees within its ambit.

---

[5] Defendants additionally argue that the Second Amended Complaint fails to allege that Defendants charged inspection fees. As this Court has previously indicated, LSF9 is a passive entity which did not engage in any business activities and consequently cannot be said to have "charged" any fees.

Plaintiffs rely on *Taylor v. Friedman*, 344 Md. 572, 584, 589 A.2d 59 (1997) to support their argument that assignees may be held liable under the statute. In *Taylor*, the Maryland Court of Appeals considered whether the Maryland Court of Special Appeals erred when it concluded that § 12-121's prohibition against inspection fees applied only to closing costs. In the course of its discussion, the Court used the collective term "Lender" to describe the Respondents, various entities which had held the note secured by the deed of trust on the residence at issue in the case. This term embraced the holder of the note secured by the deed of trust, Margaretten & Company, Inc. ("Margaretten"); the substitute trustees who were designated during foreclosure proceedings; and BA Mortgage, a Division of Bank of America, F.S.B., which acquired the note from Margaretten. Ultimately, the Court of Appeals concluded that § 12-121 was not limited to closing costs, but rather is a "continuing prohibition throughout the life of the loan." *Id.* at 582, 689 A.2d 59.

*Taylor* does not stand for the proposition that assignees may be held liable under § 12-101(f). Although the Court described the various note holders in the case as "Lender" and appeared to subject each Respondent to the same analysis, it did not hold that each individual "lender" in the case could be held liable. Put simply, the Court never addressed whether the inspection fee statute applied to foreign statutory trusts like LSF9 or assignees. Neither *Taylor* nor any other authority holds that LSF9 is subject to Maryland law's prohibition against inspection fees. Accordingly, Plaintiffs have failed to state a claim against LSF9 under Count III.

## B. The Complaint Fails to Allege that the Charged Inspection Fees were Unlawful.

As previously indicated, Com. Law. § 12-121 is not a blanket ban against inspection fees. Rather, such fees may be assessed "if the inspection is needed to ascertain completion of: (1) Construction of a new home; or (2) Repairs, alterations, or other work required by the lender." *Id.* § 12-121(c). The proposed Second Amended Complaint merely alleges that Ms. Martinson was charged inspection fees before LSF9 acquired the loans, and that Caliber folded these outstanding fee amounts into the amounts it claimed were due and owing. The mere fact that these fees were charged and subsequently sought to be collected does not suggest that any violation of law has occurred. For this reason, Plaintiffs have failed to state a claim under Count III of the proposed Second Amended Complaint.

## III. Plaintiffs' Complaint is Dismissed with Prejudice.

Defendants petition this Court to both deny Plaintiffs' Motion for Leave to File an Amended Complaint and dismiss this case with prejudice. (ECF No. 36 at 32.) "The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009)). While a plaintiff "should generally be given a chance to amend his complaint . . . before the action is dismissed with prejudice," *Weigel*, 950 F. Supp. 2d at 825-26 (quoting *FinServ Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 674-76 (S.D. Tex. 2010)), dismissal with prejudice is appropriate where amendment would be futile. *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

This Court finds that Plaintiffs' proposed Amended Complaint is futile and may not be filed. Accordingly, the Original Complaint (ECF No. 2) governs this case. In a prior Letter Order (ECF No. 34), this Court dismissed Plaintiffs' declaratory judgment claim (Count I) with prejudice; dismissed Plaintiffs' unjust enrichment claims (Counts II and III) without prejudice; noted that Plaintiffs' inspection fee claims under Md. Com. Law § 12-121(a)(1)(ii) (Count IV) remained pending; and permitted Plaintiffs to file a Motion for Leave to File an Amended Complaint. Plaintiffs' unjust enrichment claims are now DISMISSED WITH PREJUDICE because Plaintiffs have been granted an opportunity to amend those claims, and those amendments are futile. Moreover, Plaintiffs have now twice grounded their unjust enrichment claims in a faulty legal theory (*i.e.*, that LSF9 was required to obtain a license under either the Maryland Collection Agency Licensing Act or the Maryland Mortgage Lender Law) and no future amendment can state a claim on these bases. Plaintiffs' inspection fee claim (Count IV) is also DISMISSED WITH PREJUDICE. This claim fails for the same reasons that Plaintiffs' amended inspection fee claim (Count III of the proposed Amended Complaint) fails. No claims remain. This case is hereby DISMISSED WITH PREJUDICE.[6]

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 35) is DENIED. Plaintiffs have failed to state a claim under both the

---

[6] Plaintiffs briefly argue that they do not require leave to file an Amended Complaint because Defendants have not yet filed a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1)(B). However, the result reached here would be appropriate even if this Court were to construe Plaintiffs' proposed amendment as the operative Complaint. Defendants have moved to dismiss the amendment, and dismissal is warranted.

Original and Amended Complaints. Accordingly, this case is DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated: September 25, 2019


_____/s/_____
Richard D. Bennett
United States District Judge